Filed 7/19/23  In re Journie J. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re JOURNIE J. et al., Persons Coming Under the Juvenile Court Law. | B319867 (Los Angeles County Super. Ct. No. 22CCJP00777A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>E.J.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

E.J. (mother) appeals from the jurisdictional order that resulted in the detention of Journie J. (born November 2009) and Jourdan J. (born April 2019). Mother argues her arrest for driving under the influence of alcohol (DUI) is not a sufficient basis for dependency jurisdiction over her children.

Since substantial evidence supports the finding that mother's conduct created a risk of harm to the children, we affirm.

## FACTUAL BACKGROUND
**Arrest, investigation, and petition**

On December 26, 2022, mother entered a sobriety checkpoint with Jourdan in the vehicle. Field sobriety tests were administered, revealing mother's blood alcohol level to be 0.08 percent on the first test and 0.09 percent on the second test. Consequently, mother was arrested for driving under the influence of alcohol, in violation of Vehicle Code section 23152.

An officer from the Los Angeles Police Department contacted the Los Angeles County Department of Children and Family Services (DCFS) to advise that Jourdan was in police custody. A social worker from DCFS arrived and assessed Jourdan to be happy and in good physical health.

The social worker interviewed Jourdan's maternal grandmother, who was also at the police station. According to maternal grandmother, she had taken care of Jourdan earlier

that day while mother was at work. When mother picked up Jourdan around 3:00 p.m., maternal grandmother did not perceive any signs of drug or alcohol influence. Maternal grandmother expressed surprise upon learning about mother's arrest for DUI, adding mother was a good mother who provided for her children's needs. She reported mother occasionally stayed at her home, but primarily resided at the home of mother's godmother, Tommy.

The social worker also spoke with T.J., mother's adult daughter. T.J. said mother called to inform T.J. of her arrest, explaining she drank only "a beer," but law enforcement claimed she had consumed "a little too much" to be driving. Mother asked T.J. to pick up Jourdan at the police station.

T.J. stated she, mother, Jourdan, and Journie resided in maternal grandmother's home, but mother also stayed at Tommy's home. T.J. asserted mother had never previously been arrested for a DUI and did not use drugs or drink alcohol. T.J. reported mother was good to T.J.'s siblings and provided for their basic needs.

During the investigation, the social worker conducted a phone interview with the father of Journie and Jourdan, Ernest J. (father), who explained he and mother separated a few years earlier and the children resided primarily with mother. He added he visited the children as often as possible and confirmed the parents maintained good communication with no formal custody order in place.

Father expressed surprise regarding mother's arrest, as she had not previously been arrested for DUI. He claimed no knowledge of mother having a history of drug or alcohol abuse.

Father reported mother as good to the children, who had never reported any form of abuse from her.

On February 26, 2022, mother consented to the children's detention, and the children were placed in father's care. Father's plan was for the children to stay with maternal grandmother.

The following day, Journie reported having been with a family friend when T.J. picked her up and explained the situation regarding mother's arrest. Journie stated it was the first time mother had been arrested, and neither parent did drugs or drank alcohol. Journie had never witnessed mother driving while under the influence and mother took good care of her and Jourdan, providing for all their needs.

Mother disclosed her diagnosis of bipolar disorder, depression, and anxiety for which she was taking psychotropic medications. She had monthly appointments with a psychiatrist and participated in weekly individual therapy. Mother denied having a criminal history or using illicit substances.

On the day of her arrest, mother reported taking her prescribed psychotropic medication around noon and 5:30 p.m., along with drinking a beer before driving to the store. She noted her medication had recently been increased, but she felt "ok" to drive and did not feel impaired or under the influence of alcohol. She was stopped at the checkpoint and subsequently arrested around 6:30 p.m.

Mother denied being an alcoholic, having a drinking problem, or using illicit drugs. She acknowledged occasionally drinking a beer but maintained she did not have an alcohol problem. Mother believed the combination of her psychotropic medication and beer may have affected her sobriety test. She expressed remorse for Jourdan being taken into protective

4

custody by law enforcement and her willingness to comply with DCFS and any recommended services. Mother agreed to have Jourdan and Journie detained and released to father.

On March 1, 2022, a Welfare and Institutions Code section 300, subdivisions (b) (failure to protect) and (j) (abuse of sibling) petition was filed.[1] It was alleged mother had placed Jourdan in a dangerous situation by operating a vehicle under the influence of alcohol with the child as a passenger, creating a risk of serious physical harm, damage, and danger for both Jourdan and Journie.

**Detention hearing**

At the March 4, 2022 detention hearing, the juvenile court ordered the children released to the parents. The court also ordered mother to abstain from alcohol and marijuana use and from driving the children until further order of the court. The court acknowledged the possibility of an interaction between mother's medication and alcohol consumption, but expressed skepticism that consuming only one beer would result in a blood alcohol level of 0.08 or 0.09 percent. This caused the court to infer mother may have consumed more alcohol than she had admitted.

**Jurisdiction hearing**

The jurisdiction hearing was held April 8, 2022. The DCFS reports containing the information gathered from interviews with mother, the children, father, and relatives were admitted into evidence, including the April 5, 2022 jurisdiction/disposition report wherein a social worker observed Jourdan to be well and comfortable with mother and maternal grandmother. Journie

---

[1] All further unattributed statutory references are to the Welfare and Institutions Code.

stated she had not seen mother drinking alcohol and was unsure if mother ever consumed alcohol. Journie also affirmed mother took good care of the children.

Mother provided her account of the day of her arrest, stating she finished work around 2:00 p.m. and drank one 16-ounce beer while Jourdan was in her care. Mother claimed she felt "ok" to drive and had  Jourdan in the car seat in the back. At the sobriety checkpoint, she underwent a breath test. She acknowledged drinking and driving was a mistake and said the last time she had a drink was a week earlier. Mother also admitted to occasional marijuana use, with her last use also being about a week earlier.

Mother reported receiving mental health treatment for over 20 years, attending weekly therapy sessions. She admitted her psychiatrist advised her against drinking with her medication. Mother did not ask if the combination would affect her blood alcohol level.

Maternal grandmother confirmed she had never seen mother under the influence and had no concerns about her care of the children.

Counsel for the children, mother, and father requested dismissal of the petition due to insufficient evidence of risk of harm to the children. Nevertheless, the juvenile court sustained counts b-1 and j-1 in the section 300 petition, finding mother's conduct of drinking and driving while taking psychotropic medications had placed the child of tender age, at risk. The court found mother's blood alcohol levels of 0.08 and 0.09 percent were highly unlikely to result from consuming only one beer, thus finding mother's statement on the matter not credible. The court noted that although family members expressed surprise at

mother's alcohol consumption, this was not evidence that mother did not have an alcohol problem. The court concluded that mother's decision to drink and drive while on psychotropic medication placed the children at ongoing risk of harm.

The court declared the children to be dependents of the court, granted them home-of-parents status, and ordered the parents to receive family maintenance services. For mother these services included weekly random or on-demand drug testing, participation in a 12-step program, and individual counseling. Mother was also ordered not to drink and drive with the children in the car and not to be under the influence of alcohol or any controlled substances while caring for them.

Mother subsequently filed a timely notice of appeal from the order of detention of Journie and Jourdan.

## DISCUSSION

### I.     Mother's failure to address all bases for jurisdiction

The court sustained counts b-1 (failure to protect) and j-1 (abuse of sibling) of the petition. Mother contends there is a lack of substantial evidence to support the order for count b-1. However, count j-1 provides an alternative basis for jurisdiction under subdivision (j) of section 300 that mother did not address in her opening brief.

Appellate review follows a fundamental rule that the judgment appealed from is presumed correct, and it is not the role of the appellate court to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) When an appellant fails to raise a point or asserts it without support with reasoned argument and citations

to authority, we treat the point as waived. (*Ibid*.) As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate. (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.)

Here, the court found jurisdiction over the children under section 300, subdivisions (b) and (j) when it sustained the petition. Only one subdivision of section 300 is necessary to find the children dependents of the court. Since mother did not challenge the court's jurisdictional findings on count j-1 in her opening brief, we need not consider her challenge to the court's decision to sustain count b-1. While she has waived an appeal from the alternative basis for jurisdiction arising from count j-1, which alone is grounds to affirm, we will address her appeal of jurisdiction based on subdivision (b).

II. **Substantial evidence supports the finding of jurisdiction**

A. *Applicable law and standard of review*

A child may be adjudged a dependent of the court under section 300, subdivision (b)(1), if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child."

The "'three elements'" for jurisdiction under section 300, subdivision (b) are "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.'" (*In re R.T.* (2017) 3 Cal.5th 622, 628, italics omitted.) "'The court need not wait until a child is seriously abused or

8

injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733.) Under this standard, we must view the evidence in the light most favorable to the juvenile court's order, drawing every reasonable inference in support of the judgment. (*In re Marina S.* (2005) 132 Cal.App.4th 158, 165.) We do not reweigh the evidence. (*Ibid.*)

B.   ***Evidence of substantial risk of harm to children established jurisdiction***

Here, the question is whether mother's arrest for DUI with her young child in the car is sufficient to establish jurisdiction over the children in the juvenile court.

At the April 8, 2022 hearing, the juvenile court found the following had been established: mother drank alcohol with the knowledge she would be driving, mother drove a vehicle while under the influence of alcohol with the child as a passenger, mother had taken psychotropic medications that mother was aware was contraindicated with the consumption of alcohol.

These facts established mother's neglectful conduct of driving while under the influence of alcohol and psychotropic medication. This neglectful conduct placed the child at a substantial risk of suffering serious physical harm due to mother's impaired ability to properly operate a motor vehicle. Consequently, substantial evidence supported the conclusion the child was at risk of suffering physical harm due to mother's failure to protect the child during transportation.

9

Moreover, the exercise of jurisdiction under section 300, subdivision (b), is proper when a child is "'of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] health and safety.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384.) The child in the vehicle was under three years old, thus meeting the criteria of being of tender years. The trial court noted that fact when it made its findings. Due to the child's tender years and inability to protect himself from mother's absence of care while transporting him, mother's neglectful conduct posed an inherent risk to his physical health and safety.

Finally, mother has denied having a drinking problem. This denial caused the court concern about mother's overall judgment regarding alcohol use. Additionally, the juvenile court noted mother is aware she should not drink alcohol after taking her prescribed psychotropic medication. Thus mother's denial of a drinking problem further supports the court's conclusion of a risk to the children's safety, necessitating supervision.

## DISPOSITION

The jurisdictional order is affirmed.

CHAVEZ, J.

We concur:

ASHMANN-GERST, Acting P. J.        HOFFSTADT, J.

10